UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-03363-JG

UNITED STATES OF AMERICA

vs.

STEPHAN MOSKWYN,

        **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes \_\_\_X\_\_\_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes \_\_\_X\_\_\_ No

                                    Respectfully submitted,

                                    WIFREDO A. FERRER
                                    UNITED STATES ATTORNEY

BY: _/s/ Michael N. Berger_
                                    MICHAEL N. BERGER
                                    ASSISTANT UNITED STATES ATTORNEY
                                    Court No.: A5501557
                                    99 N. E. 4th Street
                                    Miami, Florida    33132-2111
                                    TEL (305) 961-9445
                                    FAX (305) 536-4699

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 15-03363-J6 |
| STEPHAN MOSKWYN, | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Jul. 2, 2014 & Feb. 25, 2015__ in the county of __Miami-Dade and Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(a)(2) | Use of Unauthorized Access Devices |
| 18 U.S.C. § 1956 | Money Laundering |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jesus Pertierra, HSI Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/21/2015

City and state: Miami, Fl.

_____
*Judge's signature*

U.S. Magistrate Judge Jonathan Goodman
*Printed name and title*

## AFFIDAVIT

I, Jesus Pertierra, being duly sworn, depose and state the following:

1. I am employed as a special agent with Homeland Security Investigations ("HSI") and have been so employed since 2006. As a special agent, my duties include conducting investigations involving possible criminal violations of Federal laws, particularly those laws located in Titles 8, 18, and 21 of the United States Code.

2. This affidavit is submitted in support of a criminal complaint against Stephan Moskwyn ("Moskwyn"). I submit that there is probable cause that Moskwyn has committed violations of Title 18, United States Code, Sections 1029(a)(2) (use of unauthorized access devices) and 1956 (money laundering).

3. This affidavit is based on my own investigation, based on information obtained from law enforcement officers and other individuals, and based on my review of documents and records. Because this affidavit is submitted solely for the purpose of establishing probable cause for the criminal arrest of Moskwyn, I have not included each and every fact known to me concerning this investigation.

## BACKGROUND

4. HSI has been investigating a pervasive scam—the "grandmother scam"—for almost the last year.

5. *The Scam*: Persons working in call centers in Canada contact elderly American citizens and lie and claim that a relative is in distress and that the victim needs to send or wire money to alleviate that distress. Many of the victims or would-be victims are elderly people fooled into thinking that the relative is actually a beloved grandchild.

6. *The Money Laundering (Historical)*: Operators of the call centers require the victims to send money in an untraceable format. Historically, call center operators instructed the victim to send the money via a Western Union money order. The operators would then withdraw the proceeds at foreign Western Union branches.

7. *The Money Laundering (Recent)*: More recently, the call center operators have instructed victims to send money via a Green Dot MoneyPak or other virtual money orders.[1] In this particular scam involving Moskwyn, the call center operator has individuals convert this MoneyPak into Bitcoin (a virtual currency) through a sequence of financial transactions that typically worked as follows:

- First, a victim purchases a Moneypak at a convenience store and provides the MoneyPak number to the scammer.

- Second, the scammer finds individuals on a website called localbitcoins.com willing to convert the MoneyPak (the "MoneyPak Converters") into bitcoin, usually for a 20% to 25% fee.

- Third, the MoneyPak Converters cause the MoneyPak to be deposited onto a Green Dot pre-paid debit card.[2]

- Fourth, the MoneyPak Converters employ runners to withdraw the money from the pre-paid debit cards, typically purchasing paper money orders.

- Fifth, the MoneyPak Converters deposit the paper money orders into physical bank accounts of individuals that provide bitcoin in exchange for the paper money orders.

- Sixth, the MoneyPak Converters then transfer the bitcoin for the benefit of the scammers.

---

[1] Moneypak is a virtual money order provided by a company called Green Dot. An individual can load cash onto a Moneypak. The individual can then send the Moneypak to the scammer via a sequence of numbers. See, e.g., https://www.moneypak.com/FAQ.aspx.

[2] A pre-paid debit card must be registered in a real person's name in order to be activated and accept funds. These cards can be registered online with a person's name, date of birth, and Social Security. In this scam, these cards are activated using stolen personal identity information.

2

## DETAILS OF INVESTIGATION

8. HSI has two cooperating individuals (the "CWs") who own accounts on localbitcoins.com ("LBC").[3] These individuals began cooperating in or around November 2014. The CWs operated their LBC accounts from both Miami and Denver. Prior to the start of their cooperation, the CWs had been involved in converting MoneyPaks into Bitcoin for a fee of between 20-25%.

9. The CWs had previously converted MoneyPaks into Bitcoin using LBC for an individual with the screen name "alevine843" ("Levine"). The CWs typically communicated via electronic message or text message with Levine. Levine had indicated to the CWs that Levine was from Canada.

10. The CWs have converted over $833,000 on LBC into Bitcoin for Levine from May 2014 to November 2014. For example, on or about July 2, 2014, Levine sent Moneypak codes for $2,500 and, in exchange, the CWs sent approximately 2 bitcoins to an account controlled by Levine.

11. The CWs are aware that Levine had other trading partners. The CWs estimate that Levine likely converted several million dollars' worth of MoneyPaks into Bitcoin.

12. In late 2014 and early 2015, the CWs had conversations with Levine regarding the fact that MoneyPaks were ending and discussions about using similar virtual money orders, such as Reloadits. Levine ultimately decided to come to Miami to meet with the CWs to discuss these new processing systems.

13. On or about February 22, 2015, Levine flew to Miami, Florida and met the CWs at Tutto Pizza in Miami. I ran the tags on Levine's license plate and determined—based on a

---

[3] LBC, like eBay, works via reputation where each individual has an account name and a reputation. The CWs had strong reputations on LBC.

3

subpoena to the rental car company—that the car had been rented to Stephan Moskwyn. I also observed Moskwyn at the lunch meeting.

14. On that same day, the CWs had a recorded a conversation with Moskwyn. Moskwyn made the following statements during this lunch:

- Moskwyn identified himself as the person in charge of moving money for various call centers operating out of Canada.

- Moskwyn stated that the call centers target elderly individuals in the United States and that they have individual pose as "kids" pretending to be the relatives of the elderly victims. Moskwyn said that "kids" tell the victims they are in legal trouble or in an accident. Moskwyn indicated that some victims are especially willing to transfer funds and often agree to transfer more funds than requested.

- Moskwyn said the victims are instructed to purchase MoneyPaks or similar types of virtual money orders to help the "kid." Moskwyn then forwards the MoneyPak numbers to the CWs for conversion to bitcoin.

15. During another meeting, Moskwyn told the CWs that the scammers in the past had instructed victims to send money via Western Union money order to certain Latin American countries, including the Dominican Republic and Chile. Moskwyn further stated that there would be runners in these countries who would accept the money orders in exchange for a small fee.

16. In late February and early March 2015, the CWs taught Moskwyn how to operate the Reloadit scheme. Specifically, the CWs taught Moskwyn how to activate pre-paid debit cards that can accept Reloadit, how to load Reloadits onto the pre-paid debit cards, and how to purchase paper money orders using the pre-paid debit cards.

17. In furtherance of this fraudulent activity, among other transactions, on or about February 25, 2015, in Broward County, Florida, Moskwyn used a pre-paid debit card ending in 4154 loaded with illicit funds at a Publix to purchase money orders totaling approximately

4

$1,492.67. Law enforcement obtained surveillance video showing Moskwyn making this transaction.

18. Also, in furtherance of this activity, on or about March 9, 2015, Moskwyn sent a text message with three 10-digit Reloadit numbers and a note that they were each for $500 to one of the CWs.

19. On or about March 14, 2015, Moskwyn left Miami and flew to Puerto Plata, Dominican Republic.

20. On or about October 20, 2015, Moskwyn flew from Puerto Plata, Dominican Republic to Miami on a layover to Chile. Moskwyn was arrested at the airport.

## CONCLUSION

21. Based on the foregoing, I have probable cause to believe, in Miami-Dade County and Broward County, in the Southern District of Florida, and elsewhere, that Moskwyn:

- Did knowingly, and with intent to defraud, traffic in and use one or more unauthorized access devices, that is, pre-paid debit cards, during any one-year period, and by such conduct did obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, on or about February 25, 2015, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2.

- Did knowingly conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, on or about July 2, 2014, in violation of Title 18, United States Code, Section 1956.

_____
Jesus Pertierra
Homeland Security Investigations

Sworn to and subscribed before me this 21 day of October, 2015

_____
Johathan Goodman
United States Magistrate Judge

6